**ALLIANCE TOBACCO CO., Inc., v.
UNITED STATES.**

No. 369.

Circuit Court of Appeals, Second Circuit.
July 23, 1936.

Lamar Hardy, U. S. Atty., of New York City (William E. Collins, Sp. Asst. U. S. Atty., of New York City, of counsel), for appellant.

Single & Tyler, of New York City (Wilmer H. Eberly and Alonzo L. Tyler, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The respondent appeals from an interlocutory decree in a suit brought under the Suits in Admiralty Act (section 742, title 46, U.S.Code, 46 U.S.C.A. § 742), to recover for damages to a parcel of tobacco carried from Antwerp to New York in January, 1928, in a vessel owned by the United States, but chartered to a private company. Upon examination by cargo surveyors at the outturn on February 4th, the tobacco was found to be wet and mouldy, and this was the loss sued for. The judge concluded that the damage could not have been due to sweat, as the ship asserted, but that water in the 'tween-decks of compartment No. 5 must have caused it, perhaps because the scuppers had been clogged, but in any case because water which was more than accumulated sweat had gathered on that deck. He held therefore that the damage had not been brought within the exception for sweat or any other exception, and that the ship was liable. Only very slight damage had occurred in other holds, and the character of the wetting in the case of at least some of the bales was such as precluded the notion that it was from sweat; at this stage of the suit we are not concerned with the extent of the loss. We are satisfied that the judge was right in holding that the respondent was liable for part at any rate of the damages to the stained bales; we leave to the reference how far the damage to the other bales was the ship's fault, as well as the extent of the damage to the stained bales for which she is liable.

The other question in the case turns on whether the suit was brought in time. The shipper gave written notice of loss as required by the bill of lading on February 2, 1928, which we assume, arguendo, was the date of delivery. The suit was filed on February 4, 1930, more than two years after the notice was served, and the bill of lading allowed only one year; it was therefore begun too late unless it was saved by the proviso to section 745, as amended by the Act of June 30, 1932, 47 Stat. 420 (46 U.S.C.A. § 745). In order to show that it was so saved, the libelant proved that on February 1, 1929, it had brought an action in the City Court in the City of New York against the Fleet Corporation and the charterer of the ship, to recover for the same damages; that the defendants had answered on March 6, 1929; and that the case had been discontinued by stipulation on June 6, 1930. Such a stipulation is the equivalent of an order of discontinuance entered in the proper court.* The question is whether the action was "dismissed because not commenced within the time or in the manner prescribed in this chapter, or otherwise not commenced or prosecuted in accordance with its provisions."

This requires the action at law, suit in admiralty, or petition under the Tucker

---

*Rule 301, Supreme Court Rules of N. Y., promulgated April 9, 1929. Section 65 of the New York City Court Act (Laws 1926, c. 539).

Act (46 U.S.C.A. § 745), for which the substitute is provided, to have been dismissed because not in conformity with the Suits in Admiralty Act (46 U.S.C.A. §§ 741–752); it does not cover a dismissal because it was defective as an ordinary action or suit. In Dietrich v. United States, 80 F.(2d) 207, we held that a suit in the admiralty, discontinued under threat of dismissal because brought in the wrong district, did not fulfill this condition. There was no evidence that it had been discontinued because it did not comply with the Suits in Admiralty Act; the defect in venue might have been one which was fatal to any suit in the admiralty. We did indeed add that a discontinuance was not the equivalent of a dismissal, because it was not the action of a court. There is, however, no such rule in the admiralty as there was at common law in New York in 1930, and in any event this declaration was in no sense necessary to the result, and may have been too strict. After January 6, 1930, it was apparent to every one that all actions, suits in the admiralty, or petitions under the Tucker Act, must be dismissed for lack of jurisdiction, if they could have been brought under the Suits in Admiralty Act. It was idle to press them further, and the libelant at bar, recognizing this and at once countering with a suit under the Suits in Admiralty Act, did all that anybody could have then supposed necessary. Had he left the action pending, no doubt he must have stood upon the timeliness of the suit at bar, taken by itself, but when the court discontinued the suit by virtue of the stipulation, it was enough. We will not so far disregard the substance of the matter as to hold that there is a difference between an order of discontinuance and an order of dismissal. United States v. Galveston D. D. & C. Co., 76 F.(2d) 277 (C.C.A. 5). Indeed, strictly speaking, discontinuance is an exotic at common law; there was a nonsuit, by which the court ended the action against the plaintiff's will, and a retraxit, which was his voluntary act. United States v. Parker, 120 U.S. 89, 95, 7 S.Ct. 454, 30 L.Ed. 601; Bullock v. Perry, 2 Stew. & P. (Ala.) 319, 321, 322. Discontinuance appears to have been imported from chancery. It must of course appear that the discontinuance was "because" the action did not conform to the Suits in Admiralty Act; but if the plaintiff realized that it had no escape, we do not think it material that it did not await the inevitable, but acquiesced. This issue was never tried out in the District Court, and the respondent, if it is not satisfied, may insist that it be proved. It would seem unnecessary to send the cause back; we will take the evidence before a master in this court on whom the parties may agree if they can. We will affirm the decree upon condition that within twenty days after this opinion is filed, the respondent does not file with the clerk a demand for a reference on this issue. If it does, a reference will be had, and no decree will be entered until the report comes in and is acted upon. At the risk of repetition, we say that the issue will be whether the libelant discontinued the action on June 6, 1930, for the reason that the decision of the Supreme Court on January 6, 1930, had made success impossible.

Decree affirmed.