### PHŒNIX INS. CO. OF HARTFORD v. UNITED STATES.
### No. 3496.

District Court, D. Connecticut.
Dec. 30, 1932.

Bigham, Englar, Jones & Houston, of New York City (F. Herbert Prem and Alfred Ogden, both of New York City, of counsel), for plaintiff.

John Buckley, U. S. Atty. and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., and Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City.

HINCKS, District Judge.

This matter comes before the court on the respondent's exceptions to the libel.

The libel alleges a cause of action in damages for breach of a maritime contract of carriage, cargo damage, and general average arising out of a shipment of wire rods on June 12, 1920, by the steamship Naiwa, owned and operated by the respondent; that in August, 1926, the Japanese consignee of the shipment and owner of the cargo instituted an action in admiralty against the United States Shipping Board Emergency Fleet Corporation in the United States District Court for the Eastern District of South Carolina, which action, although commenced within the statutory period of limitations for common-law actions against the United States cognizable in the Court of Claims, was dismissed in May, 1932, because not commenced within the time prescribed by the Suits in Admiralty Act, approved March 9, 1920 (46 USCA § 741 et seq.); that the shipment out of which the cause of action aforesaid arose was insured by the libelant herein, which by its policy became obligated to pay and did pay $5,784.41 to the Japanese consignee, the assured, on account of its damage and loss, whereby the libelant became subrogated to the rights of its assured, the Japanese consignee, against said respondent.

The Naiwa, it is established by affidavit, is no longer in existence, having been scrapped in August, 1929.

To this libel the respondent excepts on the ground that it does not state a cause of action against the respondent, and that the libel does not show that the libelant herein had brought a suit in admiralty, or an action at law, or an action under the Tucker Act of March 3, 1887 (24 Stat. 505), within the statutory period of limitation for common-law actions against the United States cognizable in the Court of Claims.

These exceptions thus raise the question whether the libel herein is within the scope of

the Act of June 30, 1932 (47 Stat. 420), amending section 5 of the Suits in Admiralty Act of March 9, 1920, 41 Stat. 526, 46 USCA § 745. The Act of 1920, § 5, had limited actions thereunder to a period of two years. The amendment of June 30, 1932, provided:

"Suits as authorized in this chapter shall be brought within two years after the cause of action arises: Provided further, That the limitations in this section contained for the commencement of suits hereunder shall not bar any suit against the United States or the United States Shipping Board Merchant Fleet Corporation, formerly known as the United States Shipping Board Emergency Fleet Corporation, brought hereunder on or before December 31, 1932, if such suit is based upon a cause of action whereon a prior suit in admiralty or an action at law or an action under subdivision (1) of section 250 of Title 28, was commenced prior to January 6, 1930, and was or may hereafter be dismissed because not commenced within the time or in the manner prescribed in this section, or otherwise not commenced or prosecuted in accordance with its provisions: Provided further, That such prior suit must have been commenced within the statutory period of limitation for common-law actions against the United States cognizable in the Court of Claims: Provided further, That there shall not be revived hereby any suit at law, in admiralty, or under subdivision (1) of section 250 of Title 28 heretofore or hereafter dismissed for lack of prosecution after filing of suit."

Specifically, the question framed is whether this libel "is based upon" the same "cause of action" as the earlier libel brought by and in the name of the Japanese consignee as set forth in the libel. If so, the exceptions must be overruled; otherwise sustained.

The committee reports to the Congress, recommending the adoption of the 1932 amendment, state, in substance, that the Suits in Admiralty Act of 1920 for almost a decade after its passage was interpreted by the federal courts as not affecting the pre-existing remedies of claimants against the United States or its agencies, the Shipping Board and Fleet Corporation, either at common law or in admiralty in the state and federal courts; that during this period in many actions, brought other than under the Suits in Admiralty Act, settlements and judgments were obtained against and paid by the Shipping Board; that on January 6, 1930, in the case of Johnson v. U. S. Shipping Board, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451, the

Supreme Court of the United States had held that the remedy afforded by the Suits in Admiralty Act was exclusive of all other remedies at law as well as in admiralty; that at the time there were a large number of such suits pending against the United States or its agencies which, on the authority of the Johnson Case, were subsequently dismissed for lack of jurisdiction after the two-year period for instituting actions under the Suits in Admiralty Act had expired, leaving such claimants without a day in court and wholly without remedy notwithstanding the policy of the government, first manifested in the Shipping Act of 1916 (39 Stat. 728, c. 451, § 9 [46 USCA § 808 note]), that vessels employed solely as merchant vessels by the United States and its agencies should be liable as privately owned vessels; that it was to correct the injustice resulting from the "technicality" of the Johnson decision that the adoption of the amendment of 1932 was recommended by the committees of Congress. "Having advertised to cargo shippers and passengers that in the event of loss or damage they had the same rights against the U. S. Shipping Board vessels as against privately owned vessels, the United States Government should not seek to take advantage of that technicality, which is in contravention of their advertised conditions." Senate Report, No. 771, June 1 (Calendar day June 6) 1932; Report from Committee on Judiciary on H. R. 7238; H. R. Report No. 1012, April 7, 1932; Report from Committee on the Judiciary on H. R. 7238.

I can find no merit in the respondent's contention that the "cause of action" set forth in this libel is not the same cause of action as that of the libel brought in 1920 by the Japanese consignee.

"Every judicial action has in it certain necessary elements,—a primary right belonging to the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant, which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing out of this delict; and, finally, the remedy or relief itself. Every action, however simple, must contain these essential elements, and, however, complicated, it has no more." Wildman v. Wildman, 70 Conn. 700, at pages 707, 708, 41 A. 1, 2.

"Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the codes of the

several states." Pomeroy's Code Remedies, § 453. It is thus clear that the cause of action depends upon the violation of a primary right; not upon the ownership of that right. It is distinct from the remedy which is the object rather than the cause of the action. Dennison v. Payne (C. C. A.) 293 F. 333. Thus the cause of action survives even though the remedy therefor be barred by a statute of limitation. The same principle obtains in the maritime law relating to laches. For the cause of action persists though the right of enforcement be barred. The Bristol (C. C.) 20 F. 800; The R. C. Reynolds (D. C.) 21 F.(2d) 796. That this is so is clearly shown by the opinion in The Key City, 14 Wall. 653, 660, 20 L. Ed. 896, where it was held that, "where the lien is to be enforced to the detriment of a purchaser for value, without notice of the lien, the defence will be held valid under shorter time, and a more rigid scrutiny of the circumstances of the delay, than when the claimant is the owner at the time the lien accrued." Thus a right unenforceable against one may yet have sufficient vitality and existence for enforcement against another, indicating clearly that the underlying cause of action survives even the presence of laches. It is plain, therefore, that the original cause of action involved herein still had existence even after the expiration of the two-year limitation of the Suits in Admiralty Act.

Nor is the identity of that cause of action changed by the subrogation of the insurer, the libelant herein, to the rights of the assured, who was the original libelant. The cause of action in both cases is the combination of the same primary right and its violation. The subrogation results only from a change in the beneficial ownership of the cause of action, and affects the underlying cause not at all. Phœnix Insurance Co. v. Erie Transportation Co., 117 U. S. 312, at pages 320–322, 6 S. Ct. 750, 29 L. Ed. 873; Hall & Long v. R. R. Co., 13 Wall. (80 U. S.) 367, at page 370, 20 L. Ed. 594; Wager v. Providence Insurance Co., 150 U. S. 99, at pages 107, 108, 14 S. Ct. 55, 37 L. Ed. 1013; The Potomac, 105 U. S. 630, 26 L. Ed. 1194; Liverpool & Great Western Steam Co. v. Phenix Insurance Co., 129 U. S. 397, 9 S. Ct. 469, 32 L. Ed. 788; The Livingstone (D. C.) 104 F. 918. See also United States v. Middleton (C. C. A.) 3 F.(2d) 384.

If Congress had intended to limit the application of the amendment to the then owners of existing causes of action, it could easily have found language adapted to that purpose. Its failure to do so is significant.

Moreover, the intent of Congress to relieve hardship requires the application of the amendment as well to the subrogee as to the original libelant.

I hold, therefore, that the libel herein sufficiently shows that the cause of action on which it is founded is the same as that brought by the Japanese consignee in the District Court of South Carolina.

The exceptions are therefore overruled.